In the Matter of JOHN A. McEVEETY, an Attorney, Respondent.

First Department, July 14, 1922.

**Attorney and client — disciplinary proceedings — attorney suspended for two years for converting client's money to his own use.**

An attorney at law who, upon the closing of a real estate transaction, is paid a sum of money by his client to be used in payment of a bill of a title guarantee company for issuing a policy of title insurance on the property and who converts the money to his own use so that his client thereafter is sued by the company and obliged to pay the bill with costs of the litigation, is guilty of such professional misconduct that he should be suspended from practice for two years.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

Respondent in person.

CLARKE, P. J.:

The respondent was admitted to practice at a term of the Appellate Division, First Department, in February, 1908. The petition charges that the respondent has been guilty of misconduct as an attorney at law as follows: That in April, 1920, the respondent acted as attorney for Frieda K. Rosenbach in the matter of the purchase by her of the premises known as 116 West Forty-eighth street, borough of Manhattan, city of New York. When the title was closed Mrs. Rosenbach paid the respondent in full for his services and gave him the further sum of $297.10, which was to be used solely for the purpose of paying the bill rendered by the Title Guarantee and Trust Company for issuing a policy of title insurance on the premises. Although the respondent promised his client that the said sum of $297.10 would be paid to the title company he converted the entire amount to his own use and concealed from his client the fact that the title company's bill had not been paid. In June, 1921, the title company brought an action against Frieda K. Rosenbach to recover the amount due and she was thereafter compelled to pay the amount demanded to the title company. The respondent has repeatedly promised to repay the money converted but has failed to do so.

The respondent interposed an answer to the petition in which he said: " He denies each and every one of the allegations contained in paragraph marked four of the petition herein except that he admits that in April, 1920, he acted as attorney for Frieda K. Rosenbach in the matter of the purchase by her of the premises known as No. 116 West 48th Street, Borough of Manhattan, City of New York, and that when the title was closed Mrs. Rosenbach paid the respondent in full for his services and gave him the further sum of $297.10, and except that he further admits on information and belief that in 1921 an action was brought by the Title Guarantee and Trust Company against the said Frieda K. Rosenbach to recover the amount of the said Title Company's fee in connection with said title and that thereafter the said Freda K. Rosenbach paid the amount claimed by said Title Company in said suit, and respondent alleges that on the 27th day of March, 1922, he paid to one Harry S. Kosch, an attorney of this Court who acted as the attorney for the said Frieda K. Rosenbach in the suit brought against her by the said Title Guarantee and Trust Company the full amount of principal and costs awarded in said action to the said Title Guarantee and Trust Company being repayment in full of the amount

paid by her to the said Title Guarantee and Trust Company as here-inbefore admitted."

He has also filed an affidavit in which he states: That from December, 1912, to December, 1918, a great part of deponent's legal business had to do with titles to real estate and in that connection deponent did considerable business with the Title Guarantee and Trust Company, and that he was accustomed to pay to the said company for its searches and policies when notified by the company that the policy was ready or at some subsequent date agreed to by said company; that when the work done by said company was for deponent individually he was accustomed personally to assume the obligation to pay therefor and made his own arrangements with the company as to the specific time when payment should be made; that during the period mentioned the company was always very liberal with respect to time of payment of outstanding accounts and deponent was accustomed to have an account charged against him on the books of the company on which payments were made from time to time at the convenience of deponent and as approved by said company; that in or about April, 1920, deponent acted as attorney for Frieda K. Rosenbach upon the purchase by her of certain premises in the city of New York and that upon the closing of title the said Frieda K. Rosenbach paid the deponent his total charges for services which included the title company's fee for searches and policy amounting to $297.10; that in ordering the searches and policy in connection with this title deponent considered himself personally obligated to pay therefor and in rendering a statement to Mrs. Rosenbach included the amount of the title company charge as an item which deponent would be compelled to disburse in the ordinary course of his relations with the Title Guarantee and Trust Company, and when deponent was notified by said company that the policy was ready for delivery about a month after closing of title deponent called at the office of the company and saw their officer who had charge of outstanding accounts and obtained from him an extension of time within which to pay for said policy until October, 1920; that thereafter on two subsequent occasions deponent obtained further extensions of time in which to pay said bill; that in April, 1921, the said company insisted on immediate payment; that deponent always considered the indebtedness to the company for said searches and policy his own indebtedness and had no reason to believe that the company regarded it otherwise until July, 1921, when he first heard that his client had been sued by the said company to recover the title company fee for said searches and policy; that deponent thereupon used

every endeavor to collect certain outstanding bills due him so that he would have funds available to pay the title company's bill and thereby procure dismissal of the suit but was unable to procure funds for the purpose; that about March 11, 1922, deponent called up the said Harry S. Kosch on the telephone and asked him as to the amount due the Title Guarantee and Trust Company in the matter of the Rosenbach title and was informed that she had paid the title company bill amounting to $297.10, with costs, and that on or about March 27, 1922, deponent forwarded this amount to the said Kosch in payment of the said bill. He further states that deponent now realizes that in accepting the money from his said client for the amount of the title company bill he was under a personal obligation to see that the money so paid to him was applied for the purpose; that although as hereinbefore stated deponent considered that in accepting such payment from Mrs. Rosenbach he was merely anticipating a disbursement to be made by himself in the ordinary course, the bill would have been paid without delay and all of the difficulties out of which this proceeding arises would have been avoided.

He has also submitted affidavits of three attorneys and one justice of the Supreme Court as to his good character.

As the facts are admitted there is no necessity for a reference. As attorney for his client he received a specific sum of money to be paid for a specific purpose. He did not pay it, and concededly converted it to his own use, and his client thereafter had to pay the same again with the costs of litigation due to his default. It was not until two years after he had so received money for such specific purpose and after proceedings had been instituted before the Association of the Bar that he made restitution. We do not need to cite the numerous decisions made by this court for the proposition that the conversion of a client's money is a most serious dereliction of an attorney's duty. Such conduct is a breach of the highest trust obligation and one which the court cannot pass over. Nor is it necessary to repeat that disciplinary proceedings are not instituted for the purpose of collecting debts but to determine whether an officer of the court retains that character which it was necessary for him to possess at the time of his admission to the bar and which he must preserve during his entire membership of that bar. It is equally unnecessary to repeat that restitution after proceedings have been instituted does not condone or wipe out the offense. The respondent claims that the disintegration of his business caused by his service in the army in the late war and the necessities of his family produced a financial condition which was responsible for the result, but the money of his client was received

long after he had been discharged from the army and personal or family financial needs do not excuse breach of trust in the conversion of money belonging to others.

We cannot overlook such professional misconduct and the respondent should be suspended from practice for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon.

LAUGHLIN, DOWLING, PAGE and GREENBAUM, JJ., concur.

Respondent suspended for two years. Settle order on notice.